**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LADONNA DOBYNE, o.b.o. D.D., ) | |
| ) | CASE NO.  1:13-cv-0042 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL ) | MAGISTRATE JUDGE GREG WHITE |
| SECURITY, ) | |
| ) | |
| Defendant. ) | **MEMORANDUM OPINION & ORDER** |

Plaintiff Ladonna Dobyne ("Dobyne"), on behalf of her minor son, D.D., challenges the final decision of the Commissioner of Social Security ("Commissioner"), denying D.D.'s claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I.  Procedural History**

On March 18, 2009, an application was filed on behalf of D.D., a child under the age of eighteen, with an alleged disability onset date of November 20, 2008.  (Tr. 20.)  The application was denied both initially and upon reconsideration.  *Id*.  Dobyne timely requested an

administrative hearing. *Id*.

On June 7, 2011, an Administrative Law Judge ("ALJ") held a hearing during which D.D., represented by counsel, and Dobyne testified. (Tr. 20.) Arthur J. Newman, M.D., a board certified pediatrician, also testified as the medical expert ("ME"). On July 20, 2011, the ALJ found D.D. did not have an impairment or combination of impairments that met or functionally equaled the listings. (Tr. 23.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Standard for Disability

To qualify for SSI benefits, an individual must demonstrate a disability as defined under the Act. "An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

To determine whether a child is disabled, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At step one, a child must not be engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At step two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c). At step three, disability will be found if a child has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1; 20 C.F.R. § 416.924(d).

To determine whether a child's impairment functionally equals the listings, the Commissioner will assess the functional limitations caused by the impairment. 20 C.F.R. §

416.926a(a). The Commissioner will consider how a child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [ ]self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment results in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairments functionally equal the listings and the child will be found disabled. 20 C.F.R. § 416.926a(d). To receive SSI benefits, a child recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

A "marked" limitation is one which seriously interferes with functioning. 20 C.F.R. § 416.926a(e)(2)(i). "Marked" limitation means "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*.

An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*.

If an impairment is found to meet, or qualify as the medical or functional equivalent of a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1).

### IV. Summary of Commissioner's Decision

The ALJ made the following findings regarding D.D. in the July 20, 2011, decision:

1. The claimant was born [in] 2003. Therefore, he was a preschooler on March 18, 2009, the date the application was filed, and is currently a school-age child (20 C.F.R. 416.926a(g)(2)).[1]

2. The claimant has not engaged in substantial gainful activity since March 18, 2009, the application date (20 C.F.R. 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder with disruptive behavior, obsessive-compulsive disorder and functional enuresis (nocturnal only) (20 C.F.R. 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 C.F.R. 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since March 18, 2009, the date the application was filed (20 C.F.R. 416.924(a)).

(Tr. 23-36.) The ALJ found that D.D. had less than marked limitations in the following five domains: acquiring and using information, attending and completing tasks, interacting and relating with others, caring for himself, and, health and physical well-being. *Id*. She further found D.D. had no limitations in the remaining domain, moving about and manipulating objects. (Tr. 34.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

---

[1] The ALJ's statement that D.D. was a preschooler on the date of the application is incorrect as D.D. turned six years old a week before the filing of the application. A child transitions from a preschooler to a school-age child at age six. 20 C.F.R. § 416.926a(g)(2).

record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281

(6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

Dobyne argues that the ALJ erred because: (1) substantial evidence does not support the finding of less than marked limitations in three domains; and, (2) inappropriate weight was assigned to the opinion of D.D.'s treating pediatrician, Anna Winfield, M.D. (ECF No. 16.)

### *Treating Physician*

Dobyne asserts that the ALJ erred by failing to give good reasons for ascribing little weight to the opinion of D.D.'s treating pediatrician Dr. Winfield. (ECF No. 15 at 13-15.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and

laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006); 20 C.F.R. § 416.927(c)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at \*9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2] Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

  Specifically, Dobyne asserts that the ALJ failed to give good reasons for rejecting Dr.

---

[2] Pursuant to 20 C.F.R. § 416.927(c), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

Winfield's conclusions that D.D. had marked limitations in four of the six domains. (ECF No. 16 at 22-24.)[3] The ALJ addressed this opinion as follows:

> In terms of medical opinions, Dr. Winfield has opined that the claimant has marked limitations in nearly all relevant domains (Ex. 12F). This opinion is entitled to little weight; the opinion expressed is wholly conclusory, providing very little explanation of the evidence relied on in forming that opinion, and contrasts sharply with the claimant's treatment history indicating vast improvement when medication compliant. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant's mother, and seemed to uncritically accept as true most, if not all, of what the claimant's mother reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's mother's subjective complaints.

(Tr. 29.) The Court disagrees with Dobyne's position that the ALJ's rationale amounts to a "perfunctory conclusion." (ECF No. 16 at 23.) Reading the opinion as a whole, the ALJ also points out that Dr. Winfield told Dobyne several times to seek treatment for her son from a mental health professional, because she was not comfortable managing his psychiatric/behavioral problems.[4] (Tr. 26, 287.) Furthermore, the ALJ explained as follows:

> In [sum], the record indicates some serious compliance issues with the claimant's

---

[3] On May 31, 2011, Dr. Winfield completed a checklist form indicating that D.D. had marked limitations in the following areas: acquiring and using information; attending and completing tasks; interacting and relating with others; and, health and physical well-being. (Tr. 422-24.) She further opined that D.D. had moderate limitation caring for himself, and no evidence of limitations in moving about and manipulating objects. *Id*. The form also indicates that D.D.'s medications cause mood swings and decreased appetite, and that his condition was chronic. (Tr. 424.) She was unaware of any problems with school attendance, but indicated that special accommodations, counseling, or assistance was needed at both home and school. She did not elaborate further. *Id*.

[4] Dr. Winfield specifically noted that although she recommended therapy from a mental health specialist and "[d]espite her frequent requests for documentation of other medical interventions, [she] only received documentation from a disability physician." (Tr. 283.) The same note indicates Dobyne had no knowledge of whether D.D. was under psychiatric care. *Id*.

> course of treatment and in taking prescribed medications; the claimant cancelled or failed to show up for doctor appointments on a number of occasions; the claimant is not always given his medication at home or the medication is discontinued without doctor consultation; and the claimant's mother often fails to follow-up on recommendations made by the treating doctor.
>
> Most significant in this analysis, however, is that the claimant has been prescribed appropriate medications for the alleged impairments and that when medication co-compliant, the medications have been relatively effective in controlling the claimant's symptoms with few reported side effects. Consultative examinations have shown only mild limitations on his overall functioning and the claimant has typical interests for a boy his age ...

(Tr. 29-30.)

The ALJ's explanation for ascribing little weight to Dr. Winfield's opinion is adequate and supported by her citations to the record. Throughout her opinion, the ALJ accurately references medical evidence that D.D. was much improved when he was taking his medication as prescribed. (Exh. 7F, Tr. 267, 270, 275, 279, 283, 294, 296.) The ALJ also pointed out that Dr. Winfield, in a letter dated August 31, 2009, indicated that D.D. had "no restrictions." (Tr. 311.) Finally, the ALJ's finding that Dobyne was non-compliant with her son's treatment and administering his medication is also supported by the record. (Exh. 7F, Tr. 275, 279, 283.)

Based on this evidence of record, the ALJ reasonably concluded that Dr. Winfield's admittedly conclusory statements as to D.D.'s functioning in six domains provided little explanation, failed to cite evidence supporting the opinion, and was contrary to the treatment notes that repeatedly indicated significant improvement in functioning when D.D. receives his medication. The ALJ also mentioned Dr. Winfield's lack of specialization and her own admission that she was uncomfortable with treating D.D. Reading the opinion as a whole, this Court cannot find that the ALJ's explanation was insufficient to satisfy the treating physician rule.

9

*Substantial Evidence and the ALJ's Findings in three Domains*

In her other assignment of error, Dobyne asserts that substantial evidence does not support the ALJ's finding of less than marked limitations in the following domains: acquiring and using information, attending and completing tasks, and interacting and relating with others. (ECF No. 16 at 15-21.)

Dobyne's brief argues that substantial evidence supports marked limitations in the three aforementioned domains. Dobyne points to evidence that she believes would support such a finding. *Id.* Under the substantial evidence standard, it is immaterial whether there is evidence of record capable of supporting a finding of marked limitations. An administrative decision is not subject to reversal merely because substantial evidence could have supported such findings or because Dobyne proffers a different interpretation of the evidence. "This argument obviously ignores the standard of review by which [courts] are bound. If substantial evidence supports the ALJ's findings, [a court] must affirm the resulting conclusion, even if [the court] would have decided the matter differently in the first instance." *Isaac v. Sec'y of Health & Human Servs.*, 110 F.3d 64, 1997 U.S. App. LEXIS 11126 (6th Cir. 1997). In other words, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (*quoting Key v. Callahan*, 109 F .3d 270, 273 (6th Cir.1997)). A reviewing court, like this one, does not conduct a *de novo* review, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984); *Rogers v. Astrue*, 2012 WL 639473 (E.D. Ky. Feb. 27, 2012).

Dobyne, however, does not argue that there is a dearth of evidence capable of supporting the ALJ's findings. As discussed above, the ALJ cites repeated portions of the record indicating that D.D. did much better when compliant with medications. Moreover, on July 17, 2009, a state agency consultant, Silvia Vasquez, M.D., concluded that D.D. had less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others. (Tr. 240-41.) Another state agency consultant, Malika Haque, M.D., also concluded on April 9, 2010, that D.D. had less than marked limitations in the same three domains. (Tr. 258-59.) Finally, though his testimony could have been clearer, the ME at the hearing indicated that D.D. was doing "okay" in the domain of acquiring and using information, was "less than [marked]" in attending and completing tasks, and "less than [marked]" in interacting and relating with others. (Tr. 70-71.) These opinions constitute substantial evidence capable of supporting the ALJ's decision as to D.D.'s limitations in the six domains of functioning.[5] *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's deicison was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Clark*

---

[5] The opinions of non-examining state agency medical consultants can, under certain circumstances, be given significant weight. *See e.g. Black v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 140155, 2012 WL 4506018 at * 5 (N.D. Ohio Sept. 28, 2012); *Hart v. Astrue*, 2009 U.S. Dist. LEXIS 68315, 2009 WL 2485968 at * 8 (S.D. Ohio Aug. 5, 2009). This occurs because non-examining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the [Social Security] Act." SSR 96-6p, 1996 SSR LEXIS 3, 1996 WL 374180.

*v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (finding that state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.")

As such, Dobyne's argument – that substantial evidence does not support the ALJ's findings in the three specified domains – is without merit.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

s/ Greg White<br>United States Magistrate Judge

Date: September 24, 2013